UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SCARLETT WATTS,

    Plaintiff,
v.
                                  CASE NO.:

NEW PENN FINANCIAL, LLC d/b/a/
SHELLPOINT MORTGAGE SERVICING,

    Defendant.
_____/

## COMPLAINT

1. Unwanted "Robocalls" are the #1 consumer complaint in America today.

2. The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC), in 2016 this number was 3,401,614 and in 2017 it was 4,501,967.[1]

3. Shellpoint Mortgage Servicing has a corporate policy to robocall people thousands of times.

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm*

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years.

*Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

5.      Plaintiff, Scarlett Watts, alleges Defendant, Shellpoint Mortgage Servicing, robocalled her and sent her text messages that are in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"), Invasion of Privacy ("IOP"), and Intentional Infliction of Emotional Distress ("IIED").

6.      Robocalls are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7.      The TCPA was enacted to prevent companies like Shellpoint Mortgage Servicing from invading American citizens' privacy and prevent illegal robocalls.

8.      Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

2

9. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

10. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

11. Violations described in the Complaint occurred while Plaintiff was in Fort Lauderdale, FL.

## FACTUAL ALLEGATIONS

12. Plaintiff is a natural person and citizen of the State of Florida, residing in Fort Lauderdale, FL.

13. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

14. Plaintiff is an "alleged debtor."

15. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

16. Defendant is a Limited Liability Company with its principal place of business in Greenville, South Carolina, and conducts business in the State of Florida.

17. Defendant is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

18. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) and 15 U.S.C. § 1692(a)(5).

19. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (954) 529-4660.

20. Plaintiff was the "called party" during each phone call and text message subject to this lawsuit.

21. Defendant intentionally harassed and abused Plaintiff by texting several times during one day with such frequency as can reasonably be expected to harass.

22. Defendant did not have the "express consent" of the Defendant to text her cell phone.

23. "Express consent" is narrowly construed by the Courts.

24. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an "automatic telephone dialing system" (ATDS).

25. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an ATDS for each account they were calling on.

26. Defendant was put on notice Plaintiff did not want the Defendant contacting her.

27. Defendant was told repeatedly that Plaintiff's payments automatically came out of her account and to stop harassing her.[2]

28. Defendant did not have the express consent of the Plaintiff to text her on the accounts they texted her on.

29. Defendant did not have the express consent of the Plaintiff to text her about the phone calls that were already unwarranted by Plaintiff.

---

[2] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what was said to the Defendant.

30. Defendant used egregious language to harass Plaintiff and to collect a debt.

31. Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of text messages to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

32. Defendant attempted to harass and collect a debt from the Plaintiff by this campaign of telephone calls and text messages.

33. Defendant sent at least one text message to (954) 529-4660.

34. Defendant sent at least one text message to (954) 529-4660 using an ATDS.

35. Defendant sent at least ten (10) text messages to (954) 529-4660.

36. Defendant sent at least ten (10) text messages to (954) 529-4660 using an ATDS.

37. Defendant sent at least twenty (20) text messages to (954) 529-4660.

38. Defendant sent at least twenty (20) text messages to (954) 529-4660 using an ATDS

39. Each text message the Defendant made to (954) 529-4660 in the last four years was made using an ATDS.

40. Each text the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

41. Defendant has called other people's cell phones without their express consent. Defendant has sent text messages to other people's cell phones without their express consent.

42. Each call and text message the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

43. The text messages at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

44. Plaintiff repeatedly requested the Defendant to stop texting her cell phone, however, the Defendant continued to send texts that were harassing Plaintiff in attempts to collect a debt.

45. Defendant has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

46. Plaintiff's conversations with the Defendant putting them on notice that they did not want more text messages and calls were ignored and the text messages continued in an unnecessary fashion.

47. Defendant has recorded at least one conversation with the Plaintiff.

48. Defendant has recorded numerous conversations with the Plaintiff.

49. Defendant has sent approximately twenty text messages to Plaintiff's aforementioned cellular telephone number since in or about March of 2018 which will be established exactly once Defendant turns over their dialer records.

50. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

51. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

52. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

53. Defendant's aggravating and annoying text messages trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

54. Defendant's phone calls harmed Plaintiff by wasting her time.

55. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's text messages harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

56. Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

57. Defendant's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list. Defendant's corporate policy and procedures does not prevent debt collectors from intentionally texting and harassing individuals such as Plaintiff.

58. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

59. In the last 3 years, the Defendant has had 190 complaints reported to the Better Business Bureau (BBB), of which 107 of those complaints are classified as being related to "Billing/Collection Issues."3

---

[3] *Shellpoint Mortgage Servicing, Reviews & Complaints*, BETTER BUSINESS BUREAU,
https://www.bbb.org/upstatesc/business-reviews/loan-servicing/shellpoint-mortgage-servicing-in-greenville-sc-90007399/reviews-and-complaints

60. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of text messages to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the messages. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

61. Defendant never had the Plaintiff's expressed consent for placement of text messages to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

62. None of Defendant's text messages placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

63. Defendant violated the TCPA, FDCPA and FCCPA with respect to the Plaintiff.

64. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

65. Plaintiff incorporates Paragraphs one (1) through sixty-seven (67).

66. Defendant willfully violated the TCPA with respect to the Plaintiff each time they sent text messages to the Plaintiff after she revoked her consent to be texted by them using an ATDS or pre-recorded voice.

67. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed texts made to Plaintiff's cellular telephone after Plaintiff revoked her consent to be called or texted by them using an ATDS or pre-recorded voice.

68. Defendant, Shellpoint Mortgage Servicing, repeatedly sent non-emergency text messages to the wireless telephone number of Plaintiff using an automatic telephone dialing

system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

69. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

70. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Shellpoint Mortgage Servicing, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FDCPA)

71. Plaintiff incorporates Paragraphs one (1) through sixty-seven (67).

72. At all times relevant to this action, Defendant is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

73. Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

74. Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

75. Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and

judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FCCPA)

76. Plaintiff incorporates Paragraphs one (1) through sixty-seven (67).

77. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

78. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her family with such frequency as can reasonably be expected to harass the debtor or her family.

79. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her family. The Defendant continued to send text messages with a frequency that can reasonably be expected to harass the debtor or her family even after Plaintiff explained the payments were set to be taken out of her bank account monthly and that she knew when her payments were due.

80. Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the means of collecting the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

81. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## COUNT IV
### (Invasion of Privacy – Intrusion Upon Seclusion)

82. Plaintiff incorporates Paragraphs one (1) through sixty-seven (67).

83. Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

84. All of the text messages sent to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

85. Defendant's persistent autodialed calls to her cellular phone eliminated Plaintiff's right to be left alone.

86. Defendant's harassing debt collection text messages disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during her work, and continually frustrated and annoyed Plaintiff.

87. These persistent autodialed collection text messages eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with her cellular phone.

88. By texting her cellular phone, Plaintiff had no escape from these collection text messages either in her home or when she left the home.

89. By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

90. Defendant's harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to her cellular after requests to stop is highly offensive to a reasonable person.

91. Defendant intentionally intruded upon Plaintiff's solitude and seclusion by attempting to start an altercation in order to collect and harass Plaintiff over a debt.

92. As a result of Defendant's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT V
### (Intentional Infliction of Emotional Distress)

93. Plaintiff incorporates Paragraph one (1) through sixty-seven (67).

94. The harassing and abusive conduct, including the repetitive robocalls to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

95. It is beyond the pale of decency to robocall anybody twenty times without their consent.

96. The damage to the Plaintiff was and is immense. The Plaintiff had a stunned sense of helplessness because she could not stop the texts despite explaining that they had no right to send text messages in their attempts to collect a debt using her own personal information.

97. To text somebody this type of fashion is inhumane.

98. It is utterly uncivilized to robocall someone twenty times with no consent.

99. If a person texted another person twenty times without consent and in an intimidating manner, the caller would most likely be in prison for criminal harassment.

100. This is especially true if the sender continued to send the text messages after being told to stop and never had permission to text in the first place.

101. The text messages to Plaintiff by Defendant are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant for punitive damages and such other and further relief as the Court shall deem just and proper.

> Respectfully submitted,
>
> s/ William Peerce Howard
> William Peerce Howard, Esquire
> Florida Bar No.: 0103330
> The Consumer Protection Firm
> 210-A South MacDill Avenue
> Tampa, FL 33609
> Telephone: (813) 500-1500
> Facsimile: (813) 435-2369
> Billy@TheConsumerProtectionFirm.com
> *Attorney for Plaintiff*